[Cite as *Westfall v. Dlesk*, 2015-Ohio-4313.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RUSSELL A. WESTFALL, et al., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | CASE NO. 14 HA 17 |
| V. | ) | |
| | ) | OPINION |
| ESTATE OF DONALD DLESK, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Harrison County, Ohio
Case No. CVH2013-0114

JUDGMENT:                      Reversed. Judgment for Appellants.

APPEARANCES:
For Plaintiffs-Appellants      Attorney Peter D. Traska
4352 Pearl Road, Suite A
Cleveland, Ohio 44109

For Defendants-Appellees       Attorney Craig Pelini
840 Cleveland Avenue, NW, Suite 400
North Canton, Ohio 44720

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: October 13, 2015

DONOFRIO, P.J.

{¶1}   Plaintiffs-appellants, Russell Westfall and Westfall Towing, appeal from a Harrison County Common Pleas Court judgment granting summary judgment in favor of defendant-appellee, Ohio Mutual Insurance Group.

{¶2}   Donald Dlesk died in a single-vehicle accident in September 2010.  His van left the road, struck a tree, and caught fire.  The Ohio State Highway Patrol responded to the scene.  The Highway Patrol contacted appellant Westfall Towing, owned by appellant Russell Westfall, to clear the scene of the accident.  Appellants cleared the scene and stored Dlesk's van.

{¶3}   Appellants filed a claim against Dlesk's estate to recover fees for towing and storage.  The trial court entered judgment in appellants' favor, against Dlesk's estate, in the amount of $9,917.33 plus 39.8 cents per day until the judgment is paid.

{¶4}   At the time of the accident, Dlesk was insured by an automobile policy issued by appellee.  Appellants filed a supplemental complaint against appellee seeking a declaratory judgment of coverage and payment of the judgment under the terms of Dlesk's policy.

{¶5}   Appellants filed a motion for a partial judgment on the pleadings arguing they were entitled to judgment because Ohio law mandates that insurance policies provide coverage for towing and recovery services since they arise out of the ordinary use of a motor vehicle and Dlesk's policy provided such coverage.

{¶6}   Appellee then filed a motion for summary judgment, arguing Ohio's financial responsibility laws do not require it to provide coverage for towing, storage, or other services and Dlesk's policy did not provide coverage for these services.

{¶7}   The trial court found that appellee was under no statutory obligation to pay the towing expenses.  It further found that Dlesk only purchased comprehensive coverage and did not pay a premium for collision coverage, towing coverage, or specified causes of loss coverage.  It found the comprehensive coverage did not cover losses caused by a collision or the vehicle overturning.  Therefore, it found appellee was not obligated to pay for the losses associated with the collision. Accordingly, the trial court granted appellee's summary judgment motion.  Appellants

filed a timely notice of appeal on September 26, 2014.

**{¶8}** Appellants now raise three assignments of error. Appellants' first assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO GIVE EFFECT TO UNAMBIGUOUS POLICY LANGUAGE THAT EXTENDED COLLISION COVERAGE TO THE APPELLEE'S INSURED.

**{¶9}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶10}** Appellants argue the policy specifically includes collision coverage and that collision coverage would cover the towing and storage costs. They point to the following provisions in the policy in support of their argument:

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

    1. We will pay for "loss" to a covered "auto" or its equipment under:

        **a. Comprehensive Coverage**

          From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

\* \* \*

**c. Collision Coverage**

Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

**{¶11}** "Item Two" of the Declarations lists "PHYSICAL DAMAGE COMPREHENSIVE" and "PHYSICAL DAMAGE COLLISION," among other types of coverage. Next to both "PHYSICAL DAMAGE COMPREHENSIVE" and "PHYSICAL DAMAGE COLLISION," there is a "7" listed. The Declarations also lists "PHYSICAL DAMAGE TOWING AND LABOR" as an option but there is no "7" listed next to this option.

**{¶12}** The "Description Of Covered Auto Designation Symbols" defines "7" as "Specifically Described Autos" meaning "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown[.]"

**{¶13}** "Item Three" is the "SCHEDULE OF COVERED AUTOS YOU OWN." It lists a 2000 Ford E-250 van and a 1986 Ford F350 pickup. Dlesk was driving the Ford van when the accident occurred.

**{¶14}** Reading these provisions alone, it would seem clear that Dlesk had "PHYSICAL DAMAGE COLLISION" coverage. But there is another item to consider.

**{¶15}** Prior to listing the coverages, Item Two provides:

This policy provides only those coverages *where a charge is shown in the premium column below*. Each coverage will apply only to those "autos" shown as covered "autos", indicated by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

(Emphasis added.)

**{¶16}** While there is a premium of $59.00 listed for PHYSICAL DAMAGE COMPREHENSIVE, there is a premium of $0.00 listed for PHYSICAL DAMAGE COLLISION.

**{¶17}** Appellee argues that because there is no premium charge next to the PHYSICAL DAMAGE COLLISION, there was no collision coverage. It asserts that in order for collision coverage to have been in effect, the "7" had to be present *and* there had to a premium charge listed. Because there was no premium charge listed, appellee argues collision coverage was not included in Dlesk's policy.

**{¶18}** There is an ambiguity in the policy. The Declarations, Item Two contains a column titled "COVERAGES." This column contains 12 types of coverage: (1) liability, (2) personal injury protection, (3) added personal injury protection, (4) rental reimbursement, (5) auto medical payments, (6) uninsured motorists, (7) underinsured motorists, (8) physical damage comprehensive, (9) physical damage specified causes of loss, (10) physical damage collision, (11) physical damage towing and labor, and (12) uninsured motorist coverage property damage.

**{¶19}** The next column is titled "COVERED AUTO SYMBOLS." This column contains a space next to each type of coverage where a covered auto symbol is either placed or the space is left blank. A number 7 is the covered auto symbol for a specifically described auto, which in this case includes the van Dlesk was driving at the time of the accident. Next to liability coverage, the numbers 7, 8, and 9 are listed, indicating that liability coverage exists for these three types of autos. Next to auto medical payments, uninsured motorists, underinsured motorists, physical damage comprehensive, physical damage collision, and uninsured motorist coverage property damage coverages, the number 7 is listed, which indicates that coverage exists for each of these items. The spaces next to personal injury protection, added personal injury protection, rental reimbursement, physical damage specified causes of loss, and physical damage towing and labor are all blank, indicating these types of coverage are not included in the policy.

{¶20} The final column is titled "PREMIUM." This column lists the amount of premium paid for each particular type of coverage. Specific dollar amounts, ranging from $8.00 to $714.00, are listed for each of the types of coverage that have a covered auto symbol in the coverage column. For the coverages that do not have a covered auto symbol in the coverage column, $0.00 is listed in the premium column. The one exception, however, is for physical damage collision. Physical damage collision coverage is the only type of coverage for which a 7 is listed in the covered auto symbol column and for which $0.00 is listed in the premium column.

{¶21} Under appellee's interpretation of the policy, the 7 listed next to physical damage collision coverage would be meaningless. Under appellants' interpretation, the 7 would indicate collision coverage. These differing interpretations create an ambiguity in the policy language.

{¶22} It is a well-founded principle that we must construe ambiguous contracts against the drafter. *Handel's Ent., Inc. v. Wood*, 7th Dist. Nos. 04 MA 238, 05 MA 70, 2005-Ohio-6922, ¶104, citing *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314, 667 N.E.2d 949, 1996-Ohio-393.

{¶23} "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus. When an ambiguity exists in an insurance policy, the policy should be construed liberally in favor of coverage, unless such an interpretation would be unreasonable. *Spike Indus., Inc. v. Midwestern Indemn. Co.*, 7th Dist. No. 06 MA 148, 2007-Ohio-6225, ¶11, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶14.

{¶24} An ambiguity exists in this case. Pursuant to well-settled case law, we must construe this ambiguity against appellee as the insurer and drafting party. Construing the ambiguity against appellee, we find that the Dlesk policy did include collision coverage.

{¶25} Appellants assert that the collision coverage covers their towing and

storage costs, which stemmed from Dlesk's collision with a tree.

**{¶26}** Under the Physical Damage Collision Coverage section, the policy states it will pay for "loss" to a covered "auto" or its equipment caused by the covered auto's collision with another object or the covered auto's overturn. The policy defines "loss" as "direct and accidental loss or damage." (Policy, Section V, Definitions).

**{¶27}** In this case, Dlesk's van collided with another object, a tree. Thus, it fits under the collision coverage for any loss to the van.

**{¶28}** In sum, the trial court erred in granting summary judgment in appellee's favor.

**{¶29}** An ambiguity exists concerning whether collision coverage was included with the policy. Construing the ambiguity against appellee, we find that collision coverage exists. Under the collision coverage, appellee is to pay for loss resulting from the collision of Dlesk's van with a tree.

**{¶30}** Accordingly, appellants' first assignment of error has merit.

**{¶31}** Appellants' second assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE THAT, UNDER OHIO'S FINANCIAL RESPONSIBILITY ACT, EVERY POLICY ISSUED IN OHIO MUST INSURE "AGAINST LOSS FROM THE LIABILITY IMPOSED BY LAW FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE" OF THE INSURED VEHICLE.

**{¶32}** Appellants' third assignment of error states:

THE TRIAL COURT SHOULD HAVE FOUND THAT COVERAGE WAS IMPLIED BY LAW IN THE OMIG POLICY FOR TOWING AND RECOVERY SERVICES BECAUSE OF THE LOSS PROTECTION LANGUAGE, AND BECAUSE THE REMOVAL OF A

WRECKED VEHICLE MINIMIZES THE LIABLITY EXPOSURE OF THE DRIVER'S INSURER.

**{¶33}** Given our resolution of appellants' first assignment of error, their second and third assignments of error are moot.

**{¶34}** For the reasons stated above, the trial court's judgment is hereby reversed and judgment is entered in favor of appellants finding that collision coverage exists in the Dlesk policy.

Waite, J., concurs.

Robb, J., dissents with attached dissenting opinion.

Robb, J., dissenting opinion.

**{¶35}** I respectfully dissent from the decision to reverse the trial court's entry of summary judgment. I disagree that the insurance contract is ambiguous as to whether the insured had collision coverage.

**{¶36}** The principles that a contract is to be construed against the drafter and an insurance policy is to be construed in favor of coverage are not applicable unless there exists an ambiguity. *See Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 15. Even then, courts cannot construe an ambiguity in favor of the insured where it results in "an unreasonable interpretation of the words of the policy." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 8 (give effect to each provision if it is reasonable to do so). *See also Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 167, 462 N.E.2d 403 (1984) (one provision should not be disregarded as inconsistent with any other provision unless no other reasonable construction is possible).

**{¶37}** Ambiguity only exists if the provisions at issue are susceptible of more than one *reasonable* interpretation. *Lager*, 120 Ohio St.3d 47 at ¶ 16, 896 N.E.2d 666. I emphasize that the interpretation advanced by the proponent must be reasonable. *Id.* The insurance contract must be viewed in its entirety so the intent of

each part is determined from consideration of the whole. *Cincinnati Ins.*, 115 Ohio St.3d 306 at ¶ 7, 17. A contract is unambiguous if it can be given a definite legal meaning. *Id.* at ¶ 7.

{¶38} Here, the two sentences introducing Item Two, Schedule of Coverages and Covered Autos, do not create an ambiguity merely because the symbol "7" was placed next to collision coverage. The contractual standard for ascertaining whether an insured has a certain type of listed coverage is clear in the first sentence: "The policy provides only those coverages where a charge is shown in the premium column below." No charge was shown in the premium column for collision coverage.

{¶39} Immediately after this overriding mandate is the sentence explaining how one can determine what type of vehicles would be covered: "Each coverage will apply only to those 'autos' shown as covered 'autos', indicated by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Form next to the name of the coverage." When this covered auto clause refers to "[e]ach coverage," it is referring back to the prior sentence. That is, the second sentence's reference to covered autos is only applicable to those coverages where a charge is shown in the premium column.

{¶40} Moreover, the second sentence of Item Two refers to the Covered Auto Section of the policy where symbol 7 is labeled as "Specifically Described Autos" and defined as: "Only those 'autos' described in Item Three of Declarations *for which a premium charge is shown * * *.*" (Emphasis added.) This leads to Item Three, the "Schedule of Covered Autos You Own." This schedule names the covered autos and displays the limits pertaining to each auto for liability, uninsured motorists, underinsured motorists, auto med pay, and uninsured motorist property damage. In the box for comprehensive coverage, a $100 deductible and a $59 premium is shown. In the box for collision, there is no premium listed (nor is there a deductible listed). The same is true of the boxes for specific cause of loss and towing and labor—no premium is listed.

{¶41} In summary, the insured was charged no premium and paid no

premium for collision. The insurance contract clearly states that it provides only those coverages where a charge is shown in the premium column in the schedule within Item Two. The contract also clearly states that symbol 7 is a specifically described auto that is only covered if it is described in Item Three and a premium charge is shown. No premium charge is shown for collision coverage in the schedules contained in Item Two or Item Three. Accordingly, this policy did not contain collision coverage.

**{¶42}** I would overrule Appellant's first assignment of error, which claims the trial court erred in finding the policy did not extend collision coverage to the insured. I would also overrule Appellant's remaining assignments of error and conclude that the statutes and case law of Ohio do not require an insurer to pay for towing and storage costs for an accident which was not covered by the policy. As a result, I would affirm the trial court's summary judgment entered in favor of the Appellee-insurance company.